# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| JOHN FARRACE, d/b/a LEVY'S OLD RELIABLE LOAN CO., | ) ) ) | |
| Plaintiffs, | ) | |
| v. | ) ) | C.A. No. 14-468-GMS |
| BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES, | ) ) ) | |
| Defendant. | ) | |

## FIRST AMENDED COMPLAINT

Plaintiffs John Farrace, d/b/a Levy's Old Reliable Loan Co. (hereinafter "Mr. Farrace," "Levy's," or together "Plaintiffs")[1], file this Complaint against the Bureau of Alcohol, Tobacco, Firearms and Explosives (the "Agency" or "Defendant"), and in support thereof allege as follows:

## Introduction

1. This Action challenges a March 14, 2014 Final Order (the "Order") of a federal agency in a contested administrative proceeding: the Agency's denial of a Petition For Remission or Mitigation (the "Remission Petition") of an administrative forfeiture. The Order represents the Plaintiffs exhausting all possible administrative remedies, leaving them no non-judicial recourse to vindicate their Constitutional, statutory, and regulatory rights.

2. Plaintiffs allege that the Agency ignored its own published guidelines and improperly circumvented the judicial forfeiture process to deprive Plaintiffs of their day in court, refused to return Plaintiffs' property in defiance of 18 U.S.C. §983 *et seq.* despite a decision by

---

[1] Levy's is a duly incorporated Delaware corporation and an independent entity, not just a d/b/a trade name. However, the case was captioned as above during the relevant administrative proceeding and Plaintiffs maintain that captioning here for the sake of consistency.

the Department of Justice ("DOJ") to drop all criminal charges against Plaintiffs, and confiscated approximately $250,000 of Plaintiffs' property that they accumulated over a period of forty (40) years of lawful business to punish them for an inadvertent eight (8) month licensing lapse. Plaintiffs assert that the Order violates Plaintiffs' Second (right to own personal firearms), Fifth (unlawful taking without compensation), and Eighth (grossly excessive fine) Constitutional rights, as well as the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA") and its implementing regulations. The Order is therefore both contrary to law and arbitrary and capricious.

3. The case presents a simple story. The Agency has taken $250,000 of property from John Farrace, a 93-year-old man who accumulated it over 40 years of operating his mom-and-pop store – Levy's – and who considers it to be his legacy "nest egg" to pass on to his grandchildren. The Agency's sole basis for seizing that property was a Felony Information that the DOJ abandoned without ever pursuing an indictment, let alone winning a criminal trial. The Agency presently possesses the actual property, and should have returned it based on the Remission Petition without any monetary harm to the Agency. However, the Agency seems to be asserting a "guns off the streets at all costs" position that defies its own published guidelines regarding administrative forfeiture and the Plaintiffs' rights under CAFRA. Mr. Farrace has never had his day in court, has never been convicted of any crime, and simply wants his property returned as the law requires.

**The Parties**

4. Plaintiff John Farrace is an individual resident of the State of Delaware who owns and operates Levy's Old Reliable Loan Co. ("Levy's"), a Delaware Corporation located at 501 North Market Street in Wilmington, Delaware.

5. Defendant is an agency within the United States Department of Justice, subject to jurisdiction in this forum *inter alia* pursuant to 28 U.S.C. §1331.

### Jurisdiction and Venue

6. This action arises under the Administrative Procedures Act 5 U.S.C. §§701-706. This Court has original jurisdiction over the subject matter of this action pursuant to 5 U.S.C. §702 and 28 U.S.C. §§1331 and 1335. Personal jurisdiction over the Agency is vested by the same statutes.

7. Venue is proper within the District of Delaware pursuant to 28 U.S.C. §§1391 and 1395 because: (a) Plaintiffs are both citizens of Delaware; and (b) the Agency seized the relevant property from Plaintiffs' store located in Wilmington, Delaware, a few blocks from the seat of this Court.

### Factual Allegations

8. Mr. Farrace, through Levy's, operates a pawn shop on the corner of Market and Fifth Streets in Wilmington, Delaware, and has so operated for more than four decades.

9. Mr. Farrace, through Levy's, held a Federal Firearms License ("FFL"), number 8-51-002-02-1J-00213, for many years prior to 2002. The precise date of issuance of that FFL is unknown to Plaintiffs at this time.

10. Pursuant to that FFL, Plaintiffs would accept pawns of firearms at their store. In context, the verb "to pawn" means that Mr. Farrace would accept bailments of firearms as collateral for personal loans he would make to the store's customers. Issuing such loans is Plaintiffs' primary business. When the customer repaid the loan, Plaintiffs would return the collateral to the customer. In the event that the customer defaulted on the loan, the collateral automatically became the property of Plaintiffs pursuant to the loan contract. With respect to

3

firearms, when a customer repaid a loan secured by a firearm, Plaintiffs would run the required federal and state background checks prior to returning the firearm.

11. Though the FFL entitled Plaintiffs to sell firearms at their store, they never did so for many reasons, including to maintain their positive relationship with local law enforcement and the City of Wilmington. Thus, instead of selling firearms that were forfeited from defaulted loan contracts, Mr. Farrace simply held such firearms locked in gun safes at Levy's. Mr. Farrace viewed his gradual accumulation of such firearms as a "nest egg" of substantial asset value.

12. Over 40+ years of business operations, Plaintiffs collected hundreds of firearms in the ordinary course of business as described *ante*.

13. Additionally, Mr. Farrace stored his personal firearms, i.e. firearms that he bought for himself entirely unconnected to Levy's and its pawn business, in the gun safes at Levy's. Mr. Farrace stored his personal firearms at Levy's because the gun safes there protected them from theft or misuse.

14. In total, there were 702 firearms in the gun safes at Levy's on or about April 22, 2004, referred to collectively as the "Disputed Firearms." The Disputed Firearms are a mixture of those firearms acquired via Plaintiffs' ordinary business operations, and Mr. Farrace's personal firearms that he stored in the store's gun safes.

15. The aggregate value of the Disputed Firearms is approximately $250,000.

16. At some point circa 2001, Levy's FFL expired, and Mr. Farrace, through Levy's, applied for a new license. The Agency denied Levy's new application for a FFL on May 13, 2002.

17. Mr. Farrace protested the denial of the requested FFL renewal. The Agency then held a hearing on the denial of Levy's FFL and upheld that denial on July 8, 2003.

18. Mr. Farrace subsequently appealed the denial of his FFL renewal to this Court. After some litigation wrangling which included Mr. Farrace defeating the Agency's motion to dismiss, Mr. Farrace and the Agency stipulated to the dismissal of the appeal August 23, 2004, which was ordered by Judge Farnan on August 25, 2004.

19. During the pendency of Mr. Farrace's appeal of his license denial to this Court, the Agency raided Levy's on April 22, 2004. The raid was based on a Felony Information that accused Mr. Farrace of "dealing" in firearms without a FFL for approximately nine (9) months from July 19, 2003 until April 15, 2004. The Agency seized the Disputed Firearms from the gun safes at Levy's during that raid.

20. The Agency appears to have taken the position that Mr. Farrace's appeal to the District Court of the denial of his FFL renewal was an irrelevance, and that Mr. Farrace was criminally "dealing" in firearms the moment the Agency denied his license renewal, regardless of this Court's appellate jurisdiction.

21. The Agency further appears to have taken the position that accepting a bailment of firearms (as opposed to, say, a ring) as collateral for a loan constitutes "dealing" in firearms subject to criminal prosecution absent a license, even if such firearms are neither bought nor sold but rather merely bailed and stored during the term of the loan.

22. Most importantly, the Agency has affirmatively stated that all of the Disputed Firearms somehow became illegal upon the Agency's administrative denial of Mr. Farrace's FFL renewal, despite that they came into Plaintiffs' possession via a previously valid FFL and were acquired lawfully over decades of Mr. Farrace's fully-licensed operation of his store. This legal position flatly contradicts 27 C.F.R. §478.152(b).

ME1 17903753v.2

23. <u>The DOJ never prosecuted Mr. Farrace for any crime</u> and, in fact, informed him through counsel that it had elected to abandon all charges on or around May 16, 2006. To be clear, <u>neither Levy's nor Mr. Farrace have been adjudicated guilty of any crime</u>, ever, regarding the Disputed Firearms.

24. The administrative file on this dispute is ten (10) years long, incredibly tortured and includes among other things an apparent loss of the case file by the Agency and intervention by members of the United States Congress on Mr. Farrace's behalf.[2] Despite that tortured procedural history, the Agency file was finally closed via the Order dated March 14, 2014, rendering this dispute ripe for judicial review.

25. On information and belief, the Agency still possesses the Disputed Firearms and has not destroyed them.

26. On further information and belief, the Agency has not destroyed the Disputed Firearms because it is aware of the possible ownership rights of third parties who pawned the firearms to Plaintiffs as collateral for loans and who may later return to retrieve their property. On further information and belief, the Agency in fact has returned several of the Disputed Firearms to the persons who pawned them based on "innocent owner" claims.

27. Because the Agency still possesses the Disputed Firearms, properly returning them to Plaintiffs in accordance with the law causes no monetary harm to the Agency. The Agency is barred from reselling forfeited firearms pursuant to 26 U.S.C. §5872(b), and thus there is no possible monetary benefit to the Agency from refusing to return the Disputed Firearms to Plaintiffs. Indeed, the Agency would save money by meeting its legal obligations, because Mr.

---

[2] Present counsel did not represent Plaintiffs during the administrative proceeding.

Farrace, rather than the Agency, would become responsible for storage costs and dealing with the claims of third parties who had previously pawned the firearms.

## Count I
## Denial of the Remission Petition Violates 18 U.S.C. §924(d)

28. Paragraphs 1 - 27 are incorporated by reference as if fully restated herein.

29. 18 U.S.C. §924(d)(1) requires that "[t]hat upon acquittal of the owner or possessor, or dismissal of the charges against him other than upon motion of the Government prior to trial … the seized or relinquished firearms or ammunition shall be returned forthwith to the owner or possessor." Thus, the Agency was required to return the Disputed Firearms to Mr. Farrace upon the DOJ's decision to drop its pursuit of a criminal indictment, which occurred at some point prior to May 16, 2006.

30. The Agency was further required to return the Disputed Firearms upon the DOJ's decision to drop all criminal proceedings against Mr. Farrace by implementing regulations as stated at 27 C.F.R. §§72.21(c) and 478.152(a).

31. The Agency refused to return the Disputed Firearms despite Mr. Farrace's repeated requests, culminating in its final Order of March 14, 2014.

32. The Agency's refusal via the Order to return the Disputed Firearms contradicts the plain language of 18 U.S.C. § 924(d)(1) and is, therefore, arbitrary and capricious, and contrary to law.

33. Plaintiffs are entitled to recover their reasonable attorneys' fees and costs from the Agency pursuant to 18 U.S.C. § 942(d)(2)(A).

# Count II
## Denial of the Remission Petition Violates CAFRA At 18 U.S.C. §983 *et seq.*

34. Paragraphs 1 - 33 are incorporated by reference as if fully restated herein.

35. 18 U.S.C. §924 et seq. required the Agency to return the Disputed Firearms to Mr. Farrace upon the DOJ's decision to drop its pursuit of a criminal indictment, which occurred at some point prior to May 16, 2006.

36. The Agency was further required to return the Disputed Firearms upon the DOJ's decision to drop all criminal proceedings against Mr. Farrace by CAFRA's implementing regulations as stated at 27 C.F.R. § 478.152(a) *et seq.*

37. The Agency refused to return the Disputed Firearms despite Mr. Farrace's repeated requests, culminating in its final Order of March 14, 2014.

38. The Agency's refusal via the Order to return the Disputed Firearms is arbitrary and capricious, and contrary to law, for at least the following reasons, among others:

    a. The Agency's interpretation of 18 U.S.C. §983, as stated in the Order, grants Mr. Farrace <u>less</u> rights because the DOJ dropped all charges against him without pursuing an indictment than he would have enjoyed if the DOJ had a strong criminal case that it was willing to prosecute. A statutory/regulatory interpretation granting fewer protections against forfeiture to citizens who are never even indicted than to criminal defendants who are indicted and tried by jury makes no sense, is contrary to law, and is arbitrary and capricious.

    b. The only purported legal basis for the Agency seizing the Disputed Firearms was the April 2004 Felony Information, which the DOJ abandoned. Without the Felony Information, there is no basis in law upon which the Agency holds any right to forfeit the Disputed Firearms. Therefore, the Order is contrary to law.

c. The Agency knew at all relevant times that this forfeiture was disputed and that judicial review was requested. Despite that actual knowledge, the Agency declined to permit a judicial forfeiture proceeding by referring this matter to a U.S. Attorney in compliance with 18 U.S.C. §924(d) and implementing regulations. Plaintiffs allege in good faith that the reason the Agency insisted upon administrative forfeiture is that a judicial forfeiture proceeding would have required the Agency to remit the Disputed Firearms the moment that the DOJ abandoned the Felony Information, pursuant to 18 U.S.C. §983(f).

d. The Agency's legal position as stated in the Order is that all 702 Disputed Firearms somehow became instantly criminalized and subject to forfeiture on the date of the FFL license lapse, despite that they were previously acquired legally under a valid FFL, and despite that they were not "dealt," *i.e.* bought, sold or otherwise transferred at any point during the relevant license lapse. This legal position finds no support whatsoever in CAFRA or its implementing regulations. To the contrary, the implementing regulations at 27 C.F.R. §478.152(b) expressly prohibit the Agency from asserting forfeiture over property not specifically tied to the alleged criminal "dealing." The Agency's interpretation is also directly contrary to the stated purpose of CAFRA, which was *inter alia* to enhance the citizenry's protection of property rights from rapacious law enforcement, and to favor judicial over administrative forfeiture.

39. Plaintiffs are entitled to recover their reasonable attorneys' fees and costs from the Agency pursuant to 28 U.S.C. §2465 *et seq.*

**Count III**
**Denial of the Remission Petition Violates the Fifth Amendment**

40. Paragraphs 1 - 39 are incorporated by reference as if fully restated herein.

41. The Order represents an unconstitutional taking of Plaintiffs' property without due process and without just compensation, in violation of the Fifth Amendment.

42. The Disputed Firearms are not contraband. It was perfectly legal for Mr. Farrace and/or Levy's to own them, regardless of whether it is legal to "deal" in them pursuant to 18 U.S.C. §922.

43. Plaintiffs accumulated the 702 Disputed Firearms legally over many decades of lawfully operating their business, and for Mr. Farrace's personal use unconnected to the business.

44. The Order asserts that all the Disputed Firearms somehow became illegal contraband at the time of Levy's 2003 lapse in its FFL and therefore are subject to forfeiture. No portion of 18 U.S.C. §982 *et seq.* supports the Agency's position on this point. CAFRA simply does not say that. Indeed, 27 C.F.R. §478.152(b) directly contradicts the Order's legal reasoning. CAFRA in fact expressly bars the Agency from just "taking whatever it finds" without any effort to tie each seized piece of property to a specific offense.

45. Mr. Farrace in fact was not "dealing" the Disputed Firearms at the time of the seizure; rather, he merely owned them based on his prior lawful business operations.

46. Plaintiffs respectfully assert that mere ownership of legally acquired firearms – with no offers to buy or sell or transfer them in any manner whatsoever – cannot constitute "dealing" within the meaning 18 U.S.C. §922. Because of that fact, the Disputed Firearms were never subject to administrative forfeiture, and the Order's denial of the Remission Petition was contrary to law, arbitrary, and capricious.

47. The Order is arbitrary and capricious, and contrary to law, in a manner that constitutes an unconstitutional taking barred by the Fifth Amendment.

ME1 17903753v.2

## Count IV
## Denial of the Remission Petition Violates the Eighth Amendment

48. Paragraphs 1 - 47 are incorporated by reference as if fully restated herein.

49. Plaintiffs respectfully assert that the Order constitutes a grossly excessive fine in violation of the Eighth Amendment.

50. The Disputed Firearms are worth approximately $250,000, and were accumulated over a forty (40) year period of Mr. Farrace lawfully operating his store.

51. The Disputed Firearms are not contraband. It has always been legal for Mr. Farrace to own the Disputed Firearms, even if the Agency is entirely correct that he was barred from selling them for an eight-month period starting in 2003, an act that he never did anyway.

52. The Order summarily criminalizes $250,000 of property that was both acquired and owned legally over forty (40) years, including under a once-valid FFL.

53. Plaintiffs respectfully assert that an administrative forfeiture of $250,000 of legally acquired property is a grossly excessive fine out of all proportion to the underlying offense: an eight-month license lapse that the DOJ affirmatively declined to prosecute.

54. Even if *arguendo* the Agency was entitled to seize the small number of firearms allegedly pawned at Levy's during the disputed 2003-2004 period while Mr. Farrace was lawfully invoking the appellate jurisdiction of this Court (a point of law that Plaintiffs deny), its decision to seize and subsequently forfeit 702 firearms accumulated over forty (40) years is arbitrary, capricious, contrary to law, and grossly disproportionate to the never-prosecuted offense.

55. CAFRA expressly recognizes the right of U.S. citizens to demand judicial review of grossly excessive, disproportionate forfeitures as contrary to the Eighth Amendment at 18 U.S.C. §983(g).

ME1 17903753v.2

## Count V
## Denial of the Remission Petition Violates the Second Amendment and Delaware Constitution Article I, Section 20.

56. Paragraphs 1 - 55 are incorporated by reference as if fully restated herein.

57. Mr. Farrace respectfully asserts that he personally owns many of the Disputed Firearms as an individual. Mr. Farrace kept the Disputed Firearms at his store because the store has gun safes to protect the firearms.

58. Mr. Farrace enjoys a Second Amendment right to keep and bear arms that he has acquired legally, including the Disputed Firearms.

59. Mr. Farrace further enjoys the right to keep and bear arms via Delaware Constitution Article I, Section 20.

60. Mr. Farrace is not a felon or otherwise a person prohibited from lawfully owning firearms.

61. The Agency's refusal via the Order to return the Disputed Firearms constitutes unlawful, unconstitutional interference with Mr. Farrace's Second Amendment rights, and his rights granted by Delaware's Constitution. The Order is therefore contrary to law, arbitrary, and capricious.

WHEREFORE, Plaintiffs respectfully pray the Court to grant an order stating that:

A. The Agency's March 14, 2014 Order is REVERSED; and,

B. The Agency is ordered to return the Disputed Firearms to Plaintiffs; and,

C. The Agency is ordered to pay Plaintiffs' reasonable attorneys' fees and costs incurred in this Action pursuant to 18 U.S.C. §942(d)(2)(A) and 28 U.S.C. §2465 *et seq.*; and,

D. All other relief that the Court may deem just and proper.

13

McCARTER & ENGLISH, LLP

*/s/ Daniel J. Brown*
Michael P. Kelly (DE #2295)
Andrew S. Dupre (DE #4621)
Daniel J. Brown (DE #4688)
Renaissance Centre – 8th Floor
405 N. King Street
Wilmington, DE 19801
Telephone: (302) 984-6300
Facsimile: (302) 984-6399
mkelly@mccarter.com
adupre@mccarter.com
dbrown@mccarter.com

*Attorneys for Plaintiffs*

Dated: May 30, 2014
124518-00001

13

ME1 17903753v.2

# CERTIFICATE OF SERVICE

I, Daniel J. Brown, hereby certify this 30th day of May, 2014, that a copy of the foregoing was caused to be filed via CM/ECF and to be served via CM/ECF upon the following counsel of record:

Jennifer K. Welsh, Esquire
Assistant United States Attorney
Charles M. Oberly, III, Esquire
United States Attorney
United States Attorneys' Office
1007 North Orange Street – Suite 700
Wilmington, DE 19801

*Attorneys for Defendant*

/s/ *Daniel J. Brown*
Daniel J. Brown (#4688)